UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SHIRLEY T. SHERROD MD PC
TARGET BENEFIT PENSION PLAN
AND TRUST,

           Plaintiff,

v.                                              Case No. 21-10484

SUNTRUST INVESTMENT
SERVICES, INC. and TRUIST BANK,

           Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Shirley T. Sherrod M.D., PC Target Benefit Pension Plan and Trust ("Plaintiff Plan") brings this action seeking declaratory and injunctive relief against Defendants SunTrust Investment Services, Inc. and Truist Financial Corporation. (ECF No. 1.) Plaintiff Plan's complaint against Defendants seeks relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Defendants hold assets of the Plaintiff Plan in an investment account in the name of the Plaintiff Plan. Plaintiff Plan argues that SunTrust is violating ERISA's anti-alienation provision, 29 U.S.C. § 1056(d), and now seeks a preliminary injunction to prevent Defendants from "interpleading the [Plaintiff] Plan's funds into Wayne County Circuit Court." (ECF No. 5.)

Defendants have filed a response, (ECF No. 11.) and Plaintiff has filed a reply (ECF No. 12.) The court has reviewed the record and does not find a hearing to be

necessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below, Plaintiff Plan's motion for a preliminary injunction will be denied.

## I. BACKGROUND

The present dispute has a factual and procedural history that would impress even Charles Dickens. The genesis of this litigation was the 2008 sale of an ophthalmology medical practice by Dr. Shirley Sherrod to purchaser Dr. Michael Sherman. (ECF No. 1, PageID.2.) The $245,000 sale resulted in over a decade of litigation for breach of contract in Wayne County Circuit Court ("Michigan Action"). *See Michael S. Sherman, D.O., P.C. v. Shirley T. Sherrod, M.D.*, P.C., No. 299045, 2013 WL 2360189, at *1 (Mich. Ct. App. May 30, 2013).

The Northern District of Illinois, in a closely related case, recently summarized the procedural history of the Michigan Action:

> The defendants in the Michigan Action are Dr. Sherrod individually and her former medical practice. (hereafter, "Michigan Defendants"). In 2013, the Wayne County Circuit Court entered summary judgment in favor of Dr. Sherman and conducted a jury trial on damages. On July 31, 2014, the trial court entered an order, which among other things, prohibited Michigan Defendants or anyone acting on their behalf from "sell[ing], transfer[ing], assign[ing], .... or otherwise dispos[ing] of any Trust Assets in any manner, pending further order of this court." (Dkt. 35-2, Exh. B, hereafter "2014 freeze order"). The order defined the "Trust" as the Shirley T. Sherrod MD PC Target Benefit Pension Plan and Trust. After a 2014 trial, the Michigan Defendants appealed several of the trial court's orders, including the 2014 freeze order and the order holding Dr. Sherrod in contempt for violating the 2014 freeze order. *See Sherman v. Sherrod*, 2015 Mich. App. LEXIS 2416, 2015 WL 9257954, (Ct. App. Dec. 17, 2015). The appellate court affirmed the freeze order and contempt order, as well as an award of attorney's fees to Michigan plaintiffs. *Id.* Although the appellate court stated there was "no uncertainty as to the fact of damages concerning defendants' breach of contract", it remanded for a new trial on damages because the trial court should have allowed evidence about the amount of damages attributable to the breach. *Id.* at *14–15.

2

> More recently, in September 2019, a jury again entered a verdict in favor of Dr. Sherman, and on November 25, 2019, Dr. Sherrod appealed the Michigan court's denial of Dr. Sherrod's motion for judgment notwithstanding the verdict. (See Dkt. 38 at 3–5).

*LJ Consulting Servs., LLC v. SunTrust Inv. Servs., Inc.*, No. 19-CV-06763, 2020 WL 469677, at *1-2 (N.D. Ill. Jan. 29, 2020), *appeal dismissed sub nom*. While the Plaintiff Plan was not a party to the Michigan Action, the ongoing litigation did affect the Plan. In 2019, the clerk of the Wayne County Circuit Court issued two writs of garnishment, presently at issue, targeting accounts held in the name of Dr. Sherrod and her professional corporation at Defendant SunTrust, a financial institution. (ECF Nos. 6-2, PageID.49-53.) The garnishment writs indicate that, inclusive of interest, Dr. Sherman seeks to collect on a judgment now valued at $534,000. (*Id.*)

Exhibits filed by Plaintiff indicate that Defendants responded to the October 2019 writs of garnishment by freezing the personal checking and savings accounts held by Dr. Sherrod containing $49,248.17 *and* also freezing a pension plan—presumably the "property" of Plaintiff Plan—containing $533,738.67. (*Id.*, PageID.44-45.) Defendants kept all these accounts under freeze and "refus[ed] to disburse money from the [Plaintiff] Plan pursuant to the Michigan state court's July 31, 2014 freeze order and a 2019 garnishment order." *LJ Consulting Servs.*, LLC, 2020 WL 469677, at *2.

The Plaintiff Plan has engaged in litigation in venues around the country against Defendants SunTrust and Truist, arguing that Defendants are violating ERISA by freezing Plaintiff Plan's assets. For instance, in January 2020, the Northern District of Illinois dismissed without prejudice Plaintiff Plan's suit ("Illinois Action") against the same Defendants seeking "to 'enjoin [SunTrust's] wrongful attachment and alienation of the assets of the [Plan].'" *LJ Consulting Servs., LLC*, 2020 WL 469677, at *1. The court

3

noted that "Plaintiffs have not alleged or provided evidence that [Defendant] SunTrust has taken any position or action related to using the Plan to satisfy the Michigan judgments." *Id.* at 3. The court dismissed the lawsuit as "Plaintiffs have not shown that they have met the requirements of Article III standing because their alleged injury was caused by the Michigan court's 2014 freeze order, not by SunTrust." *Id.* (citing *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601, 602 (7th Cir. 2013)).[1] Plaintiff Plan appealed the decision but the Seventh Circuit dismissed the case "for lack of prosecution" after Plaintiff failed to obtain new counsel to represent the Plaintiff Plan in the appeal. *See LJ Consulting Servs., LLC v. SunTust Inv. Servs., Inc.*, No. 20-1171, 2020 WL 8457707, at *1 (7th Cir. July 15, 2020).

Following the dismissal of the Illinois action, Dr. Sherrod, as an individual, filed a new action in Charleston County Circuit Court in South Carolina "seeking a declaratory judgment that the funds in the Personal [checking and savings] Accounts [held by Defendant SunTrust] are exempt from distribution to third parties." (ECF No. 6-2, PageID.46). It appears this action has also been dismissed by the trial court. *See Shirley T Sherrod v. Suntrust Banks Inc, et al.,* No. 2020-CP-10-00706 (S.C. Cir. Ct. June 30, 2020). (ECF No. 11-3, PageID.147.)

In addition to these concluded actions, the court also notes that there is an active dispute between Plaintiff Plan and the Department of Labor ("DOL") in the United States

---

[1] Evincing the long running nature of the present dispute, the district court's reasoning in *LJ Consulting Servs.* relied heavily on a Seventh Circuit opinion, from a previous iteration of essentially the same case. In that case, the Court of Appeals held that Plaintiff lacked standing to pursue a lawsuit against the financial institution who then held the Plan's assets because "the injury is not fairly traceable to the defendant, Merrill Lynch." *See Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601, 606 (7th Cir. 2013).

District Court for the Northern District of Illinois. *See Hugler v. Sherrod*, 246 F. Supp. 3d 1224 (N.D. Ill. 2017). The action, brought by the DOL in 2016, alleges that the Plaintiff Plan and its named plan administrators violated ERISA "by misallocating the $253,000 that was withdrawn from the [Plaintiff] Plan" to pay a $250,000 bond. *Id.* at 1226-27. The bond was required for Dr. Sherrod, a beneficiary of the Plan, to appeal a trial court judgment against her in the Michigan Action. *Id.* This litigation appears to be ongoing and has not yet reached a conclusion.

Because Defendants were "[f]aced with the prospect of multiple potential sources of liability" regarding the Plaintiff Plan "Defendants filed a [June 2020] Motion to Intervene in the Michigan Action for the purposes of interpleading the disputed funds," pursuant to MCR 3.603(A). (ECF No. 11, PageID.89; ECF No. 6-2, PageID.43-47.) By intervening, Defendants sought to shield themselves from the ongoing multi-venue litigation. Defendants' brief supporting their motion for interpleader requests that the Wayne County Circuit Court "interplead the Disputed Funds." (*See* ECF No. 11-4, PageID.160.) Defendants' brief, however, clarifies that Defendants request that the court take different actions with regard to Dr. Sherrod's personal funds, as opposed to the assets of Plaintiff Plan. Specifically, Defendants' motion for interpleader in the Michigan Action requested an order:

   a. Directing [SunTrust] to interplead funds from [Dr. Sherrod's] *Personal Account* in the amount of $49,248.71 to the Clerk of the Court or whomever this Court directs the funds to be paid.
   b. *Staying the interpleading* of the $533,738.67 of Defendants' purported ERISA plan until such time as the Department of Labor's case against the Plan has come to a resolution as to the plan's disposition.

(ECF No. 11-4, PageID.161 (emphases added).)[2]

The Wayne County Circuit Court has not yet had an opportunity to rule on the request to implead such funds because Dr. Sherrod, and her professional corporation, sought to remove the Michigan Action to Federal Court on July 16, 2020. (ECF No. 11-5.) Removal was denied, and the case was remanded to Wayne County Circuit Court after the district court determined that "no federal question is presented on the face of the complaint," justifying removal. *Sherman, et al. v. Sherrod, et al.,* No. 20-11922 (E.D. Mich. Feb. 17, 2021) (Cox, J.). (*See id.*) Now that the case has been remanded, the Wayne County Circuit Court has scheduled an April 29, 2021 hearing on the pending motion to interplead funds. (ECF No. 6, PageID.19.)

The Plaintiff Plan filed the present action in the Eastern District of Michigan on March 2, 2021. (ECF No. 1.) The complaint seeks declaratory judgment and injunctive relief under ERISA's anti-alienation provision, 29 U.S.C. § 1056(d). (*Id.,* PageID.4-5.) Plaintiff Plan requests that the court lift the freeze on the Plan's assets previously put in place by the Wayne County Circuit Court. (*Id.*)

On April 6, 2021, Plaintiff Plan filed a motion for preliminary injunction in the present action. (ECF No. 5.) The motion requests that the court issue an injunction preventing the interpleading of the "Plan's funds into the Wayne County Circuit Court because . . . the funds cannot be alienated under 29 U.S.C. § 1056(d)(1)" of ERISA.

---

[2] While Plaintiff Plan's motion for preliminary injunction fails to distinguish between Dr. Sherrod personal accounts at Defendant SunTrust and the pension plan assets of the Plan, nowhere in the instant action does Plaintiff Plan dispute that it has a claim or interest in Dr. Sherrod's personal accounts containing $49,248.71. Thus, the court concludes that the proper disposition of the personal accounts is beyond the scope of the present motion.

(*Id.,* PageID.16.) Plaintiff requests that the injunction be issued before the April 29, 2021 hearing in the Michigan Action on Defendants' motion to interplead funds. (*Id.,* PageID.17.)

## II. STANDARD

The court considers four factors when deciding whether to grant a preliminary injunction. First, the court must determine "whether the plaintiff has established a substantial likelihood or probability of success on the merits of his claim." *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014). Next, the court must consider "whether the plaintiff would suffer irreparable injury if a preliminary injunction did not issue." *Id.* Finally, the court must analyze "whether the injunction would cause substantial harm to others" and "whether the public interest would be served if the court were to grant the requested injunction." *Id.* The Court will make specific findings concerning each factor, "unless fewer are dispositive of the issue." *In re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985) (citing *United States v. Sch. Dist. of Ferndale,* 577 F.2d 1339, 1352 (6th Cir.1978)).

The four factors "are to be balanced against each other. A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

## III. DISCUSSION

Applying the four balancing factors to this case, *Liberty Coins*, 748 F.3d at 689-90, the court finds that injunctive relief is not warranted.

### A. Likelihood of Success on the Merits

Plaintiff has not shown a strong likelihood of success on the merits. *Liberty Coins*, 748 F.3d at 689-90. Put simply, the court is not yet convinced that the facts underlying the current action differ markedly from previous iterations of the same dispute where other federal courts have found that the Plaintiff Plan lacked standing under Article III to pursue its claims. *See LJ Consulting Servs.*, 2020 WL 469677, at *3 ("Plaintiffs have not shown that they have met the requirements of Article III standing because their alleged injury was caused by the Michigan court's 2014 freeze order, not by SunTrust."); *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601, 606 (7th Cir. 2013) (Plaintiff Plan's "injury is not fairly traceable to the defendant [financial institution]."). And it is important to note that Plaintiff Plan's briefing did not even address these past holdings until its reply brief.

There are three elements to standing. "The plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Buchholz v. Meyer Njus Tanick, PA,* 946 F.3d 855, 861 (6th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, ––– U.S. –––, 136 S. Ct. 1540, 1547 (2016)). Any alleged injury in fact must be "(a) concrete and particularized, ... and (b) actual or imminent, not conjectural or hypothetical[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). And, a plaintiff does not have Article III standing if the injury "results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42, 96 S. Ct. 1917, 1926 (1976).

As far as the court can tell, the freeze order previously issued by the Wayne County Circuit Court remains in effect. This order, along with the ongoing litigation in the Northern District of Illinois between the Department of Labor and Plaintiff Plan, *see Hugler,* 246 F. Supp. 3d 1224—not Defendants' state court motion for interpleader—is the source of the present hold on the Plan's assets. Defendants' brief expressly states that its motion for interpleader is "not seeking to deposit or otherwise alienate any funds in any account purported to be under ERISA protection." (ECF No. 11, PageID.85.) And the language of Defendants' brief filed in the Michigan Action, requesting to interplead funds, is consistent with this position. (ECF No. 11-4, PageID.161 (requesting an order "[s]taying the interpleading of. . . purported ERISA plan until such time as the Department of Labor's case against the Plan has come to a resolution as to the plan's disposition").)

While the Defendants' motion to interplead funds may have a direct effect on the disposition of funds held in Dr. Sherrod's personal accounts at SunTrust, Defendants' request for interpleader does nothing to change the status quo regarding the Plaintiff Plan's assets which remain frozen by the previous court order. Therefore, the court finds there is still no injury in fact to the Plaintiff Plan that is fairly traceable to Defendants' actions. *See LJ Consulting Servs.*, 2020 WL 469677. Any argument that the motion for interpleader could lead to an injury in the future is mere conjecture. *See Lujan*, 504 U.S. at 560.

Additionally, while the issue has not been fully briefed by the parties, the court is skeptical of the Plaintiff Plan's purported ability to bring the present action on its own without a beneficiary or plan administrator as a co-plaintiff. A trust like Plaintiff Plan is

9

not generally recognized at common law as a separate legal entity with the capacity to be sue or be sued in its own name. *Coverdell v. Mid-South Farm Equipment Ass'n*, 335 F.2d 9, 12-13 (6th Cir.1964); 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1569 (3d ed. 2021) ("The trustee, as the owner of the legal title of the trust property, is generally the real party in interest with the power to defend actions. . . .").

Plaintiff Plan relies on 29 U.S.C. § 1132(d)(1) for the proposition that "an employee benefit plan has its own status as a legal entity and has a right to bring a lawsuit." (ECF No. 11, PageID.21-22.) "However, the majority of Courts of Appeals which have examined this issue do not interpret Section 1132(d)(1) as authorizing funds to bring suit under ERISA" without a co-plaintiff. *See Fin. Institutions Emps. Ben. Tr. v. Fin. Ins. Serv. Consultants, Inc.,* No. 92 C 0620, 1992 WL 245527, at *2 (N.D. Ill. Sept. 22, 1992) (granting defendants' motion to dismiss an ERISA claim brought by an "employee welfare benefit plan" on the grounds that "the plaintiff [plan] is not a "participant," "beneficiary," or "fiduciary" within the meaning of ERISA" and therefore could not bring an action on its own) (citing *Pressroom Unions–Printers League Income Sec. Fund v. Continental Assurance Co.*, 700 F.2d 889, 893 (2d Cir.1983)). The Sixth Circuit's position on this issue likely merits further probing as it presents another fundamental question regarding standing. At this juncture, however, such an unresolved question regarding standing certainly does not increase Plaintiff Plan's odds of success on the merits.[3]

---

[3] Defendants' response brief also argues that "the relief sought by Plaintiff is barred on res judicata grounds." (ECF No. 11, PageID.91-92.) While this argument may have some merit, the court is not convinced by the argument as currently presented.

10

In its reply brief, Plaintiff Plan argues that the Sixth Circuit's decision in *Gen. Motors Corp. v. Buha*, 623 F.2d 455, 457 (6th Cir. 1980), "controls this case and warrants the issuing of a preliminary injunction." (ECF No. 12, PageID.173-74.) In *Buha*, plaintiff General Motors, acting as the fiduciary of a pension plan covered by ERISA, brought an action in federal court seeking to enjoin a state court writ of garnishment targeting assets in the plan. *Id.* at 457. The defendants in *Buha* were an individual seeking to collect on a writ of garnishment against a plan beneficiary and the state court judge who issued the writ. *Id.* The court held that the state court's garnishment order should be enjoined while GM litigated the issue in federal court. *See id.* at 459. ("When a district court finds that an action in a state court will have the effect of making it impossible for a fiduciary of a pension plan to carry out its responsibilities under ERISA, the anti-injunction provisions of s 2283 do not prohibit it from enjoining the state court proceedings.")

*Buha*, however, does not resolve the standing issues presently at bar. The primary defendant in *Buha* was the party who sought the writ of garnishment in state court thereby causing a concreate and particularized injury to the plan. In contrast, the Defendants in the present action did not bring the writ of garnishment and take no position on its enforceability. Defendants are simply a bank who happened to serve as custodians of the account at the time a writ of garnishment was sought. While the *Buha*

---

Defendants cite the district court's holding in *LJ Consulting Servs., LLC v. SunTrust Inv. Servs., Inc.*, No. 19-CV-06763, 2020 WL 469677, at *1-2 (N.D. Ill. Jan. 29, 2020), *appeal dismissed sub nom*, where the court dismissed an almost identical claim brought by Plaintiff Plan on Fed. R. Civ. P. 12(b)(1) grounds without prejudice. Since the district court explicitly stated that the dismissal in that action was "without prejudice" the opinion should not be considered a decision the merits, therefore res judicata does not apply. *See Guzowski v. Hartman*, 849 F.2d 252, 255 (6th Cir. 1988).

decision will clearly guide the court's review of the present claim if Plaintiff Plan first prevails on the threshold issue of standing, *Buha* does little at this juncture to increase the Plaintiff's likelihood of success on the merits.

### B. Irreparable Injury

Plaintiff has not come close to establishing irreparable injury if an injunction is not granted. *Liberty Coins*, 748 F.3d at 689-90. "As a general rule, a movant has not established irreparable harm where damages would adequately compensate the movant for the asserted harm." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995) (quotations removed). It is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir.1992). The present dispute, at its core, is about an investment account containing $533,738.67. (ECF Nos. 6-2, PageID.44-45.) Even if the Wayne County Circuit Court chose to take procession of the Plan's funds—which the Defendants do not currently seek—such an action is easily reversible as only fungible money is involved.

Furthermore, as pointed out by Defendants, Plaintiff Plan filed a request for a temporary restraining order in the Illinois Action against Defendants in October 2019 that similarly alleged irreparable harm over the same issue. (ECF No. 11, PageID.92; ECF No. 11-2, PageID.119.) Now a year-and-half later, it is apparent that no irreparable harm has occurred despite the denial of their previous TRO request. This history further calls into question the true urgency and likelihood of the alleged irreparable harm

occurring. Therefore, for the reasons stated above, the court finds that an injunction is not necessary to prevent irreparable harm. *Liberty Coins*, 748 F.3d at 689-90.[4]

### C. Substantial Harm to Others

Before issuing an injunction, the court must determine if it will cause substantial harm to others. *Liberty Coins*, 748 F.3d at 689-90. Plaintiff argues that Defendants "cannot possibly be harmed by continuing to hold onto funds until the court can rule on the proper handling of funds." (ECF No. 6, PageID.25.) Defendants do not directly contest this element, likely because they repeatedly state in their briefing that they are not currently "seeking to deposit or do anything other than preserve the [plan's] funds." (ECF No. 11, PageID.93.) So, the court concludes an injunction would be unlikely to cause substantial harm to others.

### D. Public Interest

The public interest does not weigh substantially in favor of an injunction. *Liberty Coins*, 748 F.3d at 689-90. Plaintiff Plan argues that the "public interest is strongly in favor of having ERISA claims decided in federal court." (ECF No. 6, PageID.27) The court, however, is not convinced that the issuance of a preliminary injunction at this point will have any effect on where the ERISA claims are ultimately decided.

Furthermore, there are competing public interests in favor of allowing Defendants to utilize the interpleader process. The "purpose of an interpleader action is 'to resolve

---

[4] In its reply brief, Plaintiff Plan presents a jurisdictional parade of horribles it alleges could occur if the state court allows the Plan's funds to be interpleaded in the Michigan action. (ECF No. 12, PageID.181.) The court is not convinced that even such a situation would leave the Plan's fiduciaries without remedies to vindicate their claim. *See, e.g., Gen. Motors Corp. v. Buha*, 623 F.2d 455, 459 (6th Cir. 1980) (finding that a plan fiduciary could enjoin a state court writ of garnishment by bringing a federal claim directly against the *party seeking to enforce the garnishment*).

competing rights and claims to the property and to protect the party holding the property from multiple liability and the expense of multiple suits.'" *Aegon Structured Settlements, Inc. v. Hicks*, No. 2:10-CV-14996, 2011 WL 6739287, at *2 (E.D. Mich. Nov. 16, 2011) (quoting *Premier Trust, Inc. v. Duvall*, 559 F.Supp.2d 1109, 1113 (D. Nev. 2008)). The multi-district nature of the present litigation serves as a pertinent example of why interpleader is an important procedural device that serves the public interest. Unnecessary and duplicative litigation across the county serves no public purpose. Issuing an injunction to prevent the interpleader action from moving forward at this stage is not in the public interest.

### E.  Balancing the Factors

Plaintiff Plan has failed to demonstrate a substantial likelihood of success on the merits, and since the Plan's assets are fungible, the chance of irreparable injury seems extremely small. (*Id.*, PageID.94-111, 113.) The public interest does not weigh strongly in favor of an injunction, but an injunction is unlikely to cause substantial harm to others. Since the majority of factors weigh heavily against the issuance of a preliminary injunction, Plaintiff Plan's motion will be denied. *Liberty Coins*, 748 F.3d at 689-90.

### IV. CONCLUSION

IT IS ORDERED that Plaintiff's Motion for Preliminary Injunction (ECF No. 5) is DENIED.

                                                  s/Robert H. Cleland                /
                                                  ROBERT H. CLELAND
                                                  UNITED STATES DISTRICT JUDGE

Dated:  April 29, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 29, 2021, by electronic and/or ordinary mail.

s/Lisa Wagner                              /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\21-10484.SHERROD.MotionforPreliminaryInjunction.AAB.2.docx