**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

SHIRLEY T. SHERROD MD PC
TARGET BENEFIT PENSION PLAN
AND TRUST,

                Plaintiff,

v.                                       Case No. 21-10484

SUNTRUST INVESTMENT
SERVICES, INC.,

                Defendant.
_____/

**OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION TO DISMISS**

Plaintiff Shirley T. Sherrod M.D. PC Target Benefit Pension Plan and Trust

("Plaintiff Plan") brings this action seeking declaratory, injunctive relief, and monetary

damages against Defendant SunTrust Investment Services.[1] (ECF No. 4.) Plaintiff

Plan's complaint seeks relief under the Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. Defendant holds assets of the Plaintiff Plan

in an investment account in the name of the Plaintiff Plan. Before the court is

Defendant's motion to dismiss this action in its entirety pursuant to Fed. R. Civ. P.

12(b)(1) and 12(b)(6). The court has reviewed the record and does not find a hearing to

be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below, the court will

grant Defendant's motion and dismiss. (ECF No. 4).

_____

[1]      The parties subsequently agreed to the dismissal of a second Defendant, Truist
Financial Corporation, by stipulation.

## I.  BACKGROUND

The history of the present action is long and circuitous; its genesis was the 2008 sale of an ophthalmology medical practice by Dr. Shirley Sherrod to purchaser Dr. Michael Sherman. (ECF No. 1, PageID.2.) The $245,000 sale resulted in over a decade of litigation for breach of contract in Wayne County Circuit Court ("Michigan Action"). *See Michael S. Sherman, D.O., P.C. v. Shirley T. Sherrod, M.D.*, P.C., No. 299045, 2013 WL 2360189, at *1 (Mich. Ct. App. May 30, 2013).

The Northern District of Illinois, in another closely related case, recently summarized the procedural history of the Michigan Action:

> The defendants in the Michigan Action are Dr. Sherrod individually and her former medical practice. (hereafter, "Michigan Defendants"). In 2013, the Wayne County Circuit Court entered summary judgment in favor of Dr. Sherman and conducted a jury trial on damages. On July 31, 2014, the trial court entered an order, which among other things, prohibited Michigan Defendants or anyone acting on their behalf from "sell[ing], transfer[ring], assign[ing], .... or otherwise dispos[ing] of any Trust Assets in any manner, pending further order of this court." (Dkt. 35-2, Exh. B, hereafter "2014 freeze order"). The order defined the "Trust" as the Shirley T. Sherrod MD PC Target Benefit Pension Plan and Trust. After a 2014 trial, the Michigan Defendants appealed several of the trial court's orders, including the 2014 freeze order and the order holding Dr. Sherrod in contempt for violating the 2014 freeze order. *See Sherman v. Sherrod*, 2015 Mich. App. LEXIS 2416, 2015 WL 9257954, (Ct. App. Dec. 17, 2015). The appellate court affirmed the freeze order and contempt order, as well as an award of attorney's fees to Michigan plaintiffs. *Id.* Although the appellate court stated there was "no uncertainty as to the fact of damages concerning defendants' breach of contract", it remanded for a new trial on damages because the trial court should have allowed evidence about the amount of damages attributable to the breach. *Id.* at *14–15.
>
> More recently, in September 2019, a jury again entered a verdict in favor of Dr. Sherman, and on November 25, 2019, Dr. Sherrod appealed the Michigan court's denial of Dr. Sherrod's motion for judgment notwithstanding the verdict. (See Dkt. 38 at 3–5).

*LJ Consulting Servs., LLC v. SunTrust Inv. Servs., Inc.*, No. 19-CV-06763, 2020 WL
469677, at *1-2 (N.D. Ill. Jan. 29, 2020), *appeal dismissed sub nom*. While the Plaintiff
Plan was not a party to the Michigan Action, the ongoing litigation did affect the Plan. In
2019, the clerk of the Wayne County Circuit Court issued two writs of garnishment,
targeting accounts held in the name of Dr. Sherrod and her professional corporation at
Defendant SunTrust, a financial institution. (ECF Nos. 6-2, PageID.49-53.) The
garnishment writs indicate that, inclusive of interest, Dr. Sherman seeks to collect on a
judgment now valued at $534,000. (*Id.*)

Exhibits filed by Plaintiff indicate that Defendant responded to the October 2019
writs of garnishment by freezing the personal checking and savings accounts held by
Dr. Sherrod containing $49,248.17 *and* also freezing a pension plan—presumably the
"property" of Plaintiff Plan—containing $533,738.67. (*Id.*, PageID.44-45.) Defendant
kept all these accounts under freeze and "refus[ed] to disburse money from the
[Plaintiff] Plan pursuant to the Michigan state court's July 31, 2014 freeze order and a
2019 garnishment order." *LJ Consulting Servs.*, LLC, 2020 WL 469677, at *2.

The Plaintiff Plan has engaged in litigation in venues around the country against
Defendant SunTrust, arguing that Defendant is violating ERISA by freezing Plaintiff
Plan's assets. For instance, in January 2020, the Northern District of Illinois dismissed
without prejudice Plaintiff Plan's suit ("Illinois Action") against the same Defendants
seeking "to 'enjoin [SunTrust's] wrongful attachment and alienation of the assets of the
[Plan].'" *LJ Consulting Servs., LLC*, 2020 WL 469677, at *1. The court noted that
"Plaintiffs have not alleged or provided evidence that [Defendant] SunTrust has taken
any position or action related to using the Plan to satisfy the Michigan judgments." *Id.* at

3. The court dismissed the lawsuit, holding that "Plaintiffs have not shown that they have met the requirements of Article III standing because their alleged injury was caused by the Michigan court's 2014 freeze order, not by SunTrust." *Id.* (citing *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601, 602 (7th Cir. 2013)).[2] Plaintiff Plan appealed the decision, but the Seventh Circuit dismissed the case "for lack of prosecution" after Plaintiff failed to obtain new counsel to represent the Plaintiff Plan in the appeal. *See LJ Consulting Servs., LLC v. SunTrust Inv. Servs., Inc.*, No. 20-1171, 2020 WL 8457707, at *1 (7th Cir. July 15, 2020).

Following the dismissal of the Illinois action, Dr. Sherrod, as an individual, filed a new action in Charleston County Circuit Court in South Carolina "seeking a declaratory judgment that the funds in the Personal [checking and savings] Accounts [held by Defendant SunTrust] are exempt from distribution to third parties." (ECF No. 6-2, PageID.46). This action has also been dismissed by the trial court. *See Shirley T Sherrod v. Suntrust Banks Inc, et al.,* No. 2020-CP-10-00706 (S.C. Cir. Ct. June 30, 2020). (ECF No. 11-3, PageID.147.)

In addition to these concluded actions, there is an active dispute between Plaintiff Plan and the U.S. Department of Labor ("the DOL Action") in the United States District Court for the Northern District of Illinois. *See Hugler v. Sherrod*, 246 F. Supp. 3d 1224 (N.D. Ill. 2017). The action, brought by the DOL in 2016, alleges that the Plaintiff Plan

---

[2]     Evincing the long running nature of the present dispute, the district court's reasoning in *LJ Consulting Servs.* relied heavily on a Seventh Circuit opinion from a previous iteration of essentially the same case. In that case, the Court of Appeals held that Plaintiff lacked standing to pursue a lawsuit against the financial institution who then held the Plan's assets because "the injury is not fairly traceable to the defendant, Merrill Lynch." *See Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601, 606 (7th Cir. 2013).

and its fiduciaries Shirley T. Sherrod and Leroy Johnson violated ERISA "by misallocating the $253,000 that was withdrawn from the [Plaintiff] Plan" to pay a $250,000 bond for Dr. Sherrod's personal benefit. *Id.* at 1226-27. The bond was required for Dr. Sherrod, who is both a beneficiary and fiduciary of the Plan, to appeal a trial court judgment against her in the Michigan Action. *Id.* The DOL is seeking injunctive relief barring Sherrod and Johnson from serving as fiduciaries and the appointment of an independent fiduciary "to perform a proper accounting of [Dr.] Sherrod's distributions, terminate the Plan [by] mak[ing] distributions to the Plan's participants." *See Hunger*, 1:16-cv-04825, (ECF No. 169). This litigation remains ongoing, and the DOL's motion for summary judgment seeking to take control of the plan is currently pending. *See id.*

Because Defendant was "[f]aced with the prospect of multiple potential sources of liability" regarding the Plaintiff Plan, "Defendant[] filed a [June 2020] Motion to Intervene in the Michigan Action for the purposes of interpleading the disputed funds," pursuant to MCR 3.603(A). (ECF No. 11, PageID.89; ECF No. 6-2, PageID.43-47.) By intervening, Defendants sought to shield themselves from the ongoing multi-venue litigation. Defendant requested that the circuit court take different actions with regard to Dr. Sherrod's personal funds, which Defendant also held, as opposed to the assets of Plaintiff Plan. Specifically, Defendants' motion for interpleader in the Michigan Action requested an order:

    a. Directing [SunTrust] to interplead funds from [Dr. Sherrod's] *Personal Account* in the amount of $49,248.71 to the Clerk of the Court or whomever this Court directs the funds to be paid.

    b. *Staying the interpleading* of the $533,738.67 of Defendants' purported ERISA plan until such time as the Department of Labor's case against the Plan has come to a resolution as to the plan's disposition.

(ECF No. 11-4, PageID.161 (emphases added).)

5

Plaintiff Plan filed the present action in March 2021, before the Wayne County Circuit Court could rule on Defendant SunTrust's "Motion to Interplead" in the State Action.[3] (ECF No. 4.) The complaint seeks declaratory judgment and injunctive relief under ERISA's anti-alienation provision, 29 U.S.C. § 1056(d). (*Id.*) Specifically, Plaintiff Plan sought a declaratory judgment that any "garnishment [order] from the [Wayne County Circuit Court] is of no legal effect and should be ignored by [Defendant SunTrust]," an injunction unfreezing the Plan's assets, and monetary damages stemming from the Plan's assets being frozen. (*Id.*, PageID.13-14.) Likely hoping to head off a ruling on Defendant's Motion to Interplead in the State Action, Plaintiff filed a motion for preliminary injunction in April 2021. (ECF No. 5.) This court denied the preliminary injunction because "Plaintiff ha[d] not shown a strong likelihood of success on the merits." (ECF No. 14, PageID.241.) The court reasoned that "Defendant['s] request for interpleader does nothing to change the status quo regarding the Plaintiff Plan's assets which remain frozen by the previous court order," so Plaintiff lacks standing to pursue a claim. (*Id.*, PageID.242 ("[T]he court finds there is still no injury in fact to the Plaintiff Plan that is fairly traceable to Defendant['s] actions.").)

On May 26, 2021, the Wayne County Circuit Court granted Defendant's motion to interplead in the state action. While the order required Defendant SunTrust to deposit the $49,248.71 held by it in Dr. Sherrod's personal account with the court clerk, it also

---

[3]     Dr. Sherrod, acting in her personal capacity, had already unsuccessfully attempted to remove the Michigan Action to federal court. *See Sherman, et al. v. Sherrod, et al.*, No. 20-11922 (E.D. Mich. Feb. 17, 2021) (Cox, J.) (denying removal because "no federal question is presented on the face of the complaint" that justified removal).

found that the funds SunTrust held for Plaintiff Plan "shall be preserved by [SunTrust] pending the outcome of the action in the [DOL] action in the U.S. District Court for the Northern District of Illinois. . . . No Party, person, or entity shall make any claim against the purported ERISA funds unless authorized or directed to do so by the U.S. District Court for the Northern District of Illinois." (ECF No. 21-2, PageID.392.)

Defendant now moves to dismiss Plaintiff's complaint in its entirety, arguing (1) that Plaintiff lacks standing to pursue its claims as the injury alleged by Plaintiff "stems from the underlying Michigan Action rather than Defendant," (2) that the relief sought by Plaintiff is barred by the *Rooker-Feldman* doctrine because its challenges an underlying state court judgment, and (3) that Plaintiff fails to state a claim upon which relief can be granted. (ECF No. 15.)

In its response brief, Plaintiff Plan now admits that the Wayne County Circuit Court's interpleader order—expressly declining to garnish the Plan's funds while the DOL Action is being litigated in the North District of Illinois — "on its surface may seem to eliminate the Plan's right to continue to pursue this litigation." (ECF No. 20, PageID.347.) But Plaintiff Plan argues that the court "still need[s] to reach a conclusion on th[e] issues" raised in its complaint by issuing a declaratory judgment on whether a state court garnishment order could prevent Plaintiff Plan from fighting the garnishment in federal court. (*Id.*) Furthermore, Plaintiff Plan argues in its response brief that Count IV of their complaint seeking monetary damages remains viable because it "seeks only damages for periods not covered by court orders." (*Id.*, PageID.349.) Plaintiff Plan concedes, however, that Counts II and III of its complaint seeking injunctive relief are

now moot given the terms of the interpleader order imposed by the Wayne County

Circuit Court. (*Id.*, PageID.345.)

## II.  STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for

failure to state a claim upon which relief may be granted. Under the Rule, the court

construes the complaint in the light most favorable to plaintiff and accepts all well-

pleaded factual allegations as true. *Barber v. Miller*, 809 F.3d 840, 843 (6th Cir. 2015).

Federal Rule of Civil Procedure 8 requires a plaintiff to present in the complaint "a short

and plain statement of the claim showing that the pleader is entitled to relief." A

complaint must provide sufficient facts to "state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*,

550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "To state

a valid claim, a complaint must contain either direct or inferential allegations respecting

all the material elements to sustain recovery under some viable legal theory." *Boland v.

Holder*, 682 F.3d 531, 534 (6th Cir. 2012) (emphasis removed) (citing *League of United

Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). Determining

8

whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In reviewing a motion to dismiss, the court may consider "any exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

The court must also dismiss claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Motions to dismiss under Rule 12(b)(1) attack jurisdiction in two different ways. A facial attack questions the sufficiency of the pleading. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). If the allegations, when accepted as true, establish a federal claim, then the district court has jurisdiction. *Id*. The second type of jurisdiction challenge under Rule 12(b)(1) is a factual attack. The court must evaluate conflicting evidence and arrive at the factual predicate that subject matter jurisdiction does or does not exist. *Id*.

### III. DISCUSSION

"Defendants move for dismissal on numerous grounds, but this court must first address standing issues" since "[s]ubject matter jurisdiction is a 'threshold matter' which a court must determine before proceeding to the merits." *Chennette v. Porch.com, Inc.*, 484 F. Supp. 3d 912, 913 (D. Idaho 2020) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)); *see also J.P. v. Taft,* No. 2:04-CV-692, 2005 WL 2405993, at *8 (S.D. Ohio Sept. 29, 2005) ("When a claim has been rendered moot or a

plaintiff lacks standing, a federal court is deprived of jurisdiction to hear the case.")
(citing *Baker v. Carr*, 369 U.S. 186, 204 (1962); *Church of Scientology of California v.
United States*, 506 U.S. 9, 12 (1992)).

Since Plaintiff Plan has conceded that Counts II and III seeking injunctive relief
should be dismissed as moot, the court will first address whether Plaintiff has standing
to pursue a claim seeking "a declaratory judgment that the garnishment from the
[Wayne County] State Court Action is of no legal effect." (ECF No. 4, PageID.13.)

A plaintiff attempting to bring a claim under the Declaratory Judgment Act, 28
U.S.C. § 2201, "at the pleading stage," still has "the burden of alleging facts establishing
each element of [Article III] standing." *Shelby Advocs. for Valid Elections v. Hargett*, 947
F.3d 977, 981 (6th Cir. 2020), *cert. denied*. Indeed, it is this requirement that separates
a declaratory judgment ruling from an advisory opinion. To establish Article III standing
a plaintiff must show "(1) an 'injury in fact,' (2) a sufficient 'causal connection between
the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be
redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149,
157-58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). While
"[d]eclaratory judgments are typically sought before a completed 'injury-in-fact' has
occurred, "a plaintiff must show actual present harm or a significant possibility of future
harm in order to demonstrate the need for pre-enforcement review." *Nat'l Rifle Ass'n of
Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997); *see also Sullivan v. Benningfield,* 920
F.3d 401, 407-08 (6th Cir. 2019) (quotations omitted) ("In the context of claims for
injunctive or declaratory relief, the threatened injury in fact must be concrete and
particularized, as well as actual and imminent, not conjectural or hypothetical."). And the

alleged injury cannot "result[] from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).

Given the procedural posture of the present case, this court clearly lacks jurisdiction to consider Plaintiff Plan's claim for declaratory judgment. Plaintiff Plan has not pled an "actual or imminent injury" that is ripe for adjudication nor has it plausibly alleged that the hypothetical injury is "fairly traceable" to the conduct of Defendant SunTrust. *See Susan B. Anthony List*, 573 U.S. at 157-58.

First, the Wayne County Circuit Court has entered an order expressly stating that it intends to take no further actions involving the funds contained in Plaintiff Plan until after the Northern District of Illinois has determined the proper disposition of the Department of Labor's action against the Plan and its fiduciaries. (*See* ECF No. 21-2.) Since a summary judgment motion is currently pending in the Illinois Action seeking to *dissolve* Plaintiff Plan and *remove* its fiduciaries, it is mere speculation to opine that the Plaintiff plan will even exist, at least in its current form, in the future. The faint possibility that the Plan will at some time in the future be subject to a garnishment order by the Wayne County Circuit Court that violates ERISA is even more hypothetical. In short, the court finds the complaint as alleged contains no plausible allegation of the kind of actual or imminent injury that is required to establish standing under Article III.

Second, the possibility that Plaintiff Plan could hypothetically be subject to a garnishment order in the future does not mean the injury is fairly traceable to the actions of Defendant SunTrust. To be clear, as alleged in the Amended Complaint, Defendant merely holds the funds of Plaintiff Plan; it does not act as a fiduciary or administer the Plan. If a party in the Wayne County Action, or any other legal dispute, seeks a court

11

order garnishing funds held by Plaintiff Plan, that party is the source of the injury (and arguably the circuit court), not the bank that happens to be holding the funds at the time. *See Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 455 (6th Cir. 2017) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976) ("When a plaintiff's alleged injury is the result of 'the independent action of some third party not before the court,' the plaintiff generally lacks standing to seek its redress.")). Dismissing without prejudice a related claim, the Seventh Circuit reached the same conclusion. *See Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 719 F.3d 601, 606 (7th Cir. 2013) ("Merrill Lynch is not responsible for the freeze on the Plan account; the Wayne County Circuit Court judge is responsible for the freeze.").

Because Plaintiff Plan so clearly lacks standing to pursue its claim for declaratory judgment, Count I must be dismissed *without* prejudice. While the court understands Defendant's desire to have this claim dismissed *with* prejudice, given the number of suits that have previously been filed by Plaintiff Plan and Dr. Sherrod, "Article III standing is jurisdictional, and a federal court lacking subject-matter jurisdiction is powerless to render a judgment on the merits." *Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 F. App'x 6, 11 (6th Cir. 2018) (citing *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 319 (6th Cir. 1987)).

The court, however, will dismiss *with* prejudice Plaintiff Plan's claim, Count IV, for monetary damages for failure to plead a claim upon which relief can be granted. *See Iqbal,* 556 U.S. at 678. Plaintiff Plan's own arguments, in its response brief, readily demonstrate the deficiencies of the conclusory allegations contained in its Amended Complaint. Plaintiff's claim for monetary damages states only that "Defendant's [froze]

12

the [Plaintiff Plan's] and derivative funds in violation of 29 U.S.C. § 1050(d)(1) [causing] damage to [Plaintiff Plan]" because the freeze prevented it from "properly invest[ing] the funds and as a result missed out on significant market gains." (ECF No. 4, PageID.14.) Despite the generalized nature of the allegation contained in the complaint, which on its face suggests it sought damages for the entire time the Plan's assets remained frozen, Plaintiff Plan's briefing now indicates that it actually "seeks only damages for periods not covered by court orders." (ECF No. 20, PageID.352.) Plaintiff now states that a previously issued court freeze order "expired on July 31, 2016," and that Defendant "still refused to allow the Plan access to the funds" for over two years until another court-ordered freeze was implemented in October 2019. (*Id.*) Assuming that Plaintiff Plan's complaint "seeks only damages for periods not covered by court orders," thereby avoiding the standing issues plaguing other allegations in its Amended Complaint, the allegations as pled fall well short of what is required for a viable claim. The pleadings make no mention of dates or the length of time not covered by a court freeze order. Consequently, Plaintiff Plan's conclusory allegations cannot serve as the basis for a viable claim for monetary damages, and this count will be dismissed. *See Iqbal*, 556 U.S. 662, 678.

### IV. CONCLUSION

For the reasons explained above, the court finds that Plaintiff Plan's claim for declaratory judgment must be dismissed for lack of standing and that its claim for monetary damages must be dismissed for failure to state a claim upon which relief can be granted. Because Plaintiff Plan has already conceded that its two claims for

injunctive relief must be dismissed as moot, the court concludes that Plaintiff's

Amended Complaint must be dismissed in its entirety. Accordingly,

IT IS ORDERED that Defendant UAW's Motion to Dismiss (ECF No. 15) is

GRANTED.

IT IS ORDERED that Count (I) in Plaintiff's Amended Complaint, (ECF No. 4), is

DISMISSED WITHOUT PREJUDICE.

IT IS ORDERED that Counts (II & III) in Plaintiff's Amended Complaint, (ECF No.

4), are DISMISSED AS MOOT.

IT IS ORDERED that Count (IV) in Plaintiff's Amended Complaint, (ECF No. 4), is

DISMISSED WITH PREJUDICE.


        s/Robert H. Cleland     /
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated:  March 28, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, March 28, 2022, by electronic and/or ordinary mail.

        s/Lisa Wagner      /
        Case Manager and Deputy Clerk
        (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C1 ORDERS\21-10484.SHERROD.MTD.AAB.RHC.docx